UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GOPINATH GOPALAM                         C.A. NO. 12-542-JJB-SCR

VERSUS                                   JUDGE: BRADY

CITY OF GONZALES, THROUGH MAYOR          MAGISTRATE: RIEDLINGER
BARNEY ARCENEAUX, ET AL

## THE CITY OF GONZALES, SHERMAN JACKSON AND DAVID BREAUX'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT SEEKING DISMISSAL OF PLAINTIFF'S FEDERAL AND STATE CLAIMS

The City of Gonzales, Sherman Jackson ("Jackson") and David Breaux ("Breaux") (hereinafter collectively referred to as the "City Defendants") are entitled to summary judgment dismissing all federal and state law claims asserted by plaintiff, Gopinath Gopalam ("Plaintiff"). The City Defendants are entitled to summary judgment dismissing Plaintiff's federal claims on the following grounds: (1) Plaintiff's 42 U.S.C. § 1983 civil conspiracy claim should be dismissed because Breaux is entitled to qualified immunity; (2) alternatively, Plaintiff's 42 U.S.C. § 1983 civil conspiracy claim should be dismissed because Plaintiff has not and cannot produce any direct or circumstantial evidence of an agreement to violate Plaintiff's Fourth and Fourteenth Amendment rights; (3) Plaintiff's 42 U.S.C. § 1983 supervisory liability claim against Sherman Jackson should be dismissed because there is no evidence that Sherman Jackson failed to supervise nor is there evidence of deliberate indifference; (4) alternatively, Sherman Jackson is entitled to qualified immunity; and (5) Plaintiff's 42 U.S.C. § 1983 claims against the City of Gonzales should be dismissed because § 1983 liability cannot be based on *respondeat superior* and Plaintiff cannot prove a deprivation of a constitutional right pursuant to an official policy or custom.

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 1 of 29

Plaintiff's state law claims should be dismissed for the following reasons: (1) Plaintiff's negligence claim against Breaux must fail because there is no evidence that Breaux breached a duty, in the alternative, Breaux is entitled to discretionary immunity pursuant to La. R.S. § 9:2798.1 and, to the extent Plaintiff has asserted that the City of Gonzales is vicariously liable for Breaux's actions, that claim must fail as there is no direct liability against the individual officer; and (2) Plaintiff cannot prove intentional infliction of emotional distress because there is no evidence of an intent to inflict emotional distress or extreme and outrageous conduct. No genuine dispute exists as to any material fact thus Plaintiff's federal and state law claims should be dismissed.

## STATEMENT OF THE CASE

### I.      Allegations of the Complaint

On September 4, 2012, Gopalam Gopinath filed suit in the United States District Court for the Middle District of Louisiana against the City of Gonzales, Sherman Jackson and David Breaux.[1] Also named as defendants are Wendell B. Smith, Dr. Rama Kongara, Dr. Lance E. Bullock, Rick Bennett, St. James Behavioral Health Hospital, Inc. ("St. James") (hereinafter collectively referred to as the "St. James defendants") who are represented by separate counsel. Plaintiff's suit seeks damages allegedly arising out of an incident that occurred on September 1, 2011 at approximately 1:30 p.m. (Doc. 1, ¶ 8).

Plaintiff claims that the individual defendants engaged in a conspiracy under 42 U.S.C. § 1983 to violate his Fourth and Fourteenth Amendment rights by entering the building in which Plaintiff's businesses were located (hereinafter referred to as "the office"). (Doc. 1, ¶ 10). He also claims that the City of Gonzales had a policy of deliberate indifference to constitutional rights, improperly investigated citizen complaints, and inadequately supervised and trained

---

[1] Plaintiff also named Mayor Barney Arceneaux as a defendant, but he was dismissed from this matter. (Doc. 14).

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 2 of 29

officers. Plaintiff also asserts a claim against David Breaux for negligence and intentional infliction of emotional distress.

Plaintiff's complaint also makes reference to "Certain Other Unknown Officers of the City of Gonzales Police Department" (Doc. 1, ¶ 31, 67) as well as the Gonzales Police Department (Doc. 1, ¶ 72-81). Plaintiff never amended his complaint to individually name the "unknown officers" and the deadline to amend to add parties (December 21, 2012) has long passed. (Doc. 10). Thus, to the extent Plaintiff asserts claims against the "unknown officers," those claims should be dismissed. To the extent Plaintiff is attempting to assert claims against the City of Gonzales Police Department, the police department is not listed as a party on page 6 of the Complaint (Doc. 1), and is not a separate legal entity with the legal capacity to sue or be sued so those claims should also be dismissed as the City of Gonzales Police Department is an improper party defendant.

## II. Facts

Sometime prior to September 1, 2011, a representative of St. James Behavioral Health Hospital, Inc. called the Gonzales Police Department requesting that a Gonzales police officer provide St. James Behavioral Health Hospital, Inc. with security during an employee termination that would take place at St. James on September 1, 2011.[2] David Breaux volunteered to work the extra duty detail.[3] The contact names Breaux was given for the detail work were Wendell Smith ("Smith") and Karl Koch ("Koch").[4] On September 1, 2011, Breaux met Smith at the RaceTrac gas station on LA 30 in Gonzales, Louisiana.[5] Smith advised Breaux to go to the Cabela's in

---

[2] Exh. A, Deposition of David Breaux, p. 11, lines 17-20.
[3] *Id.* at p. 11, lines 21-23.
[4] *Id.* at p. 18, lines 23-25.
[5] *Id.* at p. 18, lines 2-18.

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 3 of 29

Gonzales and speak to Koch.[6] Breaux met Koch, attorney for St. James[7], in the Cabela's parking lot in order to learn of the details of the security work.[8] Koch advised Breaux that his job was to keep the peace after Gopinath Gopalam was terminated and to walk Gopinath Gopalam to his car along with Koch.[9] Breaux observed other people in the Cabela's parking lot who he believed were St. James board members.[10]

Breaux then followed Koch to St. James Behavioral Health Hospital.[11] While Plaintiff was being terminated, Breaux stood outside the board meeting in the hallway.[12] Following Plaintiff's termination, Breaux and Koch started to walk Plaintiff to his vehicle when Plaintiff stopped and said he needed to go into the office.[13] Breaux's understanding was that all of the buildings belonged to St. James and that Gopinath Gopalam was not allowed back into any building.[14]

Koch advised Plaintiff that he was not allowed back into the office.[15] Plaintiff became upset and began using his cell phone.[16] Koch asked Plaintiff several times to leave the premises.[17] Breaux then asked Plaintiff to leave the premises.[18] Plaintiff refused, and began using his cell phone again, this time calling 911 to report an alleged burglary.[19] Breaux advised dispatch that he was on the scene and that no other officers needed to come.[20] The people that

---

[6] *Id.* at p. 18, lines 2-11.
[7] Exh. B, Deposition of Wendell Smith, p. 10, lines 16-24.
[8] Exh. A, Deposition of David Breaux, p. 14, lines 12-25, p. 15, lines 1-5, p. 16, lines 18-25, p. 17, lines 1-21.
[9] Exh. A, Deposition of David Breaux, p. 14, lines 12-25, p. 15, lines 1-5, p. 16, lines 18-25, p. 17, lines 1-21.
[10] Exh. A, Deposition of David Breaux, p. 17, lines 4-25, p. 18, lines 1-5.
[11] *Id.* at p. 18, lines 20-22.
[12] *Id.* at p. 14, lines 12- 19, lines 21-25, p. 20, lines 1-7.
[13] *Id.* at p. 19, lines 21-25, p. 20, lines 1-11.
[14] *Id.* at p. 21, lines 6-15, p. 37, lines 1-21; Exh. C, Declaration of David Breaux.
[15] *Id.* at p. 29, lines 8-10.
[16] *Id.* at p. 22, line 11-25, p. 23, lines 1-6.
[17] Exh. C, Declaration of David Breaux, Exh. C-1, The City of Gonzales Incident Report for incident number 2011-00008429.
[18] *Id.* at p. 23, lines 4-14.
[19] *Id.* at p. 30, lines 3-11.
[20] *Id.* at p. 30, lines 3-23.

Breaux observed at Cabela's and believed were board members going into the board meeting, were the same people Breaux observed around the office.[21] Breaux then asked Plaintiff to leave the premises, and Plaintiff finally complied.[22] When Breaux asked Plaintiff to leave the premises the final time, he advised Plaintiff what could happen if he did not leave.[23] Breaux was paid $100.00 by St. James for his detail work, which is the standard $25.00 dollar fee with a four hour minimum.[24]

Plaintiff filed a formal complaint against Breaux on July 3, 2012, complaining of Breaux's actions on September 1, 2011.[25] Sherman Jackson conducted an investigation of the allegations of the complaint[26] and found that there was no validity to the complaint because Breaux acted in good faith.[27]

## LAW AND ARGUMENT

### I. Plaintiff's 42 U.S.C. § 1983 Conspiracy Claim Against David Breaux Should be Dismissed

#### A. David Breaux is Entitled to Qualified Immunity

In *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187-88 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992), the Fifth Circuit addressed how qualified immunity bears on a § 1983 conspiracy claim. Specifically, the court addressed "whether defendants who are entitled to assert qualified immunity may be personally liable based on a section 1983 conspiracy theory when the state action alleged to have violated section 1983 has been determined to be objectively reasonable in light of clearly established law." *Id.* at 1187. The court held "[i]n a section 1983 action claiming that plaintiff was injured

[21] *Id.* at p. 32, lines 13-25, p. 33, lines 1-2.

[22] *Id.* at p. 29, lines 19-25, p. 30, lines 1-2.

[23] *Id.* at p. 39, lines 24-25, p. 40, lines 1-14.

[24] *Id.* at p. 39, lines 1-9, Exh. B, Deposition of Wendell Smith, p. 22, line 8-25, p. 23, line 1.

[25] Exh. D, Declaration of Sherman Jackson, Exh. D-1, Citizen Complaint of Gopinath Gopalam.

[26] Exh. D, Declaration of Sherman Jackson; Exh. A, Deposition of David Breaux, p. 45, lines 11-13.

[27] Exh. D, Declaration of Sherman Jackson; Exh. D-2, Findings of Sherman Jackson.

by state action as the result of a conspiracy which includes private persons, the defense is still available to the qualifiedly immune actor." *Id.* In addition, the court found that when each state action alleged to have harmed the plaintiffs was determined to be qualifiedly immune, there was no need to reach the issue of whether a conspiracy existed to engage in those actions. *Id.* at 1187-88. The Fifth Circuit in *Hale v. Townley*, 45 F.3d 914, 920-21 (5th Cir. 1995) similarly held that where all defendants were entitled to qualified immunity from the underlying § 1983 claims, "the conspiracy claim [was] not actionable."

Breaux is entitled to qualified immunity. This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

Until recently, the Supreme Court mandated a two-step sequence for resolving qualified immunity claims which required a court to first decide whether the facts establish a violation of a constitutional right and then if the plaintiff satisfied the first step, to decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272, 201 (2001). The Supreme Court in *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009), however, recently rejected this mandatory two step approach, stating instead, "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. Thus, the Court is free to conduct the qualified immunity analysis in any order.

Breaux is entitled to qualified immunity with regard to the Plaintiffs' § 1983 conspiracy claim because he can satisfy the second prong of the qualified immunity analysis. The reasonableness of an official's actions must be assessed in light of "the facts available to him at the time of his action and the law that was clearly established at the time of the alleged acts." *Hays County Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992). In *Anderson v. Creighton*, 438 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987), the court explained the second prong of the analysis and stated that "clearly established" for purposes of qualified immunity means that "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." Qualified immunity thus protects an official who reasonably infringes upon a constitutional right. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000). A defendant's conduct will be considered objectively reasonable unless **all reasonable officers in the defendant's circumstances** would have known that the defendant's conduct violated the plaintiffs' federal rights. *See Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997) (emphasis added).

Breaux's actions were objectively reasonable. It was reasonable for Breaux to believe that Plaintiff's Fourth Amendment rights would not be violated when he prevented Plaintiff from entering the office and when he advised dispatch that no other officers needed to report to the scene. Koch advised Breaux that all of the buildings belonged to St. James and that Plaintiff was not allowed back into the building.[28] The people that Breaux observed at Cabela's and believed were board members going into the board meeting, were the same people Breaux observed

---

[28] Exh. A, Deposition of David Breaux, p. 21, lines 6-15, p. 37, lines 1-21, p. 29, lines 8-10.

around the office.[29] In addition, even if Breaux would have allowed Plaintiff into the office, the sublease agreement did not clearly provide that Plaintiff had exclusive rights to the office. In fact, the sublease agreement between St. James Behavioral Health Clinic (sublessor) and Sevenhills Healthcare, LLC (sublessee) that Plaintiff brought to the police station after the fact has Smith's signature on the sublessee line and Plaintiff's signature on the sublessor line.[30] Plaintiff claims that the signatures were transposed[31] but concedes that the sublease was never revised.[32] The other sublease agreement that Plaintiff claims gives him rights to the office is an unsigned sublease agreement between St. James Behavioral Health Hospital, Inc. and Apollo Management Consultants, Inc.[33] Plaintiff claims the signed version was stolen during the September 1, 2011 incident.[34] Regardless of what the leases say, Breaux was not shown any of these documents at the time and was of the belief, based on the representations of a lawyer, that plaintiff was not entitled to remain on the premises.

Considering the foregoing, Breaux's actions were reasonable in light of the facts available to him on September 1, 2011; therefore, Breaux is entitled to qualified immunity.

## B. In the Alternative, Plaintiff's Conspiracy Claim for Violation of Section 1983 Lacks Merit

In order to prevail on a § 1983 conspiracy claim, Plaintiff must show: 1) the existence of a conspiracy that involves state action; and 2) the deprivation of civil rights in furtherance of a conspiracy by a party to the conspiracy. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).

---

[29] *Id.* at p. 32, lines 13-25, p. 33, lines 1-2.

[30] Exh E, Deposition of Gopinath Gopalam, p. 104, lines 22-25, p. 105, lines 1-25, p. 106, lines 1-2; Exh. E-1, Gopalam 3, Sublease Agreement between St. James Behavioral Health Hospital, Inc. and Sevenhills Healthcare, LLC.

[31] Exh. E, Deposition of Gopinath Gopalam, p. 106, lines 3-18.

[32] *Id.* at p. 106, lines 19-25, p. 107, lines 1-2.

[33] *Id.* at p. 107, lines 19-25, p. 108, lines 1-16; Exh E-2, Gopalam 4, Unsigned Sublease Agreement between St. James Behavioral Health Hospital, Inc. and APOLLO Management Consultants, LLC.

[34] Exh. E, Deposition of Gopinath Gopalam, p. 110, lines 13-25, p. 111, lines 1-23.

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 8 of 29

A conspiracy claim is not actionable without an actual violation of Section 1983. *Hanna v. Home Ins. Co.*, 281 F.2d 298, 303 (5th Cir. 1960). To establish the existence of a conspiracy, Plaintiff "must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (affirming the district court's dismissal of plaintiff's § 1983 conspiracy claim for failure to state any factual basis to support an alleged agreement). However, " 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy under 42 U.S.C. [section] 1983." *Brinkman v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986)(*citing Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982)). The complaint must contain specific factual allegations showing that a prior agreement, plan, or meeting of the minds existed between a state actor and the defendants. *Hey v. Irving*, 161 F.3d 7 (5th Cir. 1998).

In order to survive the City Defendants' motion for summary judgment, Plaintiff must direct the court to evidence in the record demonstrating that Breaux and the St. James defendants had an agreement to violate Plaintiff's Fourth and Fourteenth Amendment rights. Plaintiff has failed to make more than conclusory allegations that such a conspiracy existed. Furthermore there is no evidence that the parties agreed to commit an illegal act.

An agreement did not exist between Breaux and the St. James defendants to violate Plaintiff's Fourth and Fourteenth Amendment rights.[35] Breaux was told and believed at the time of the incident that the office belonged to St. James.[36] Breaux stated in his deposition "When I got to St. James, the only person I was making contact with was Mr. Koch. Mr. Koch informed met that all of the property that we were in front of or around was St. James' property and that

---

[35] Exh. C, Declaration of David Breaux; Exh. B, Deposition of Wendell Smith, p. 25, lines 5-9.

[36] Exh. A, Deposition of David Breaux, p. 21, lines 6-15, p. 37, lines 1-21, p. 29, lines 8-10.

Mr. Gopalam wasn't allowed back into his office because that was property of St. James."[37]

Plaintiff admits that Breaux thought the building belonged to St. James.

> Q: Okay. Let's go back in time again. And you said the police officer told you that you couldn't go in the building because his understanding was that St. James owned the building.
> A: Yes.
> Q: You remember him telling you that?
> A: Yes....[38]

In addition, to the extent the St. James defendants had an agreement to enter the office, Breaux was not involved in that agreement; thus, a § 1983 conspiracy does not exist. A meeting of the minds must exist between a state actor and the defendants for a § 1983 civil conspiracy. *Hey v. Irving*, 161 F.3d 7 (5th Cir. 1998). While Breaux met with Smith and Koch at Cabela's and RaceTrac approximately 30 minutes before the termination, those meetings were for Breaux to receive the details of the security work rather than to hatch a plan to violate Plaintiff's constitutional rights.[39]

Breaux's direction to the police department dispatcher to not send additional officers to the scene also fails to show any agreement. Breaux did not see the need for other Gonzales police officers to come to the scene because his understanding was that Plaintiff was not allowed back into the office because all of the property belonged to St. James.[40] Furthermore, the people that Breaux observed at Cabela's and believed were board members going into the board meeting, were the same people Breaux observed around the office.[41] In *Manton v. Strain*, CIV. A. 09-0339, 2010 WL 4364552 (E.D. La. Oct. 21, 2010) *aff'd*, 439 F. App'x 328 (5th Cir. 2011), the court granted summary judgment with regard to the § 1983 civil conspiracy claim because

---

[37] Exh. A, Deposition of Breaux, p. 21, lines 6-15, p. 23, lines 19-25, p. 24, line 1.

[38] Exh. E, Deposition of Gopinath Gopalam, p. 83, lines 4-10.

[39] Exh. A, Deposition of David Breaux, p. 18, lines 2-18, p. 14, lines 12-25, p. 15, lines 1-5, p. 16, lines 18-25, p. 17, lines 1-21; Exh. C, Declaration of David Breaux.

[40] Exh. A, Deposition of David Breaux, p. 21, lines 6-15, p. 37, lines 1-21, p. 29, lines 8-10.

[41] *Id.* at p. 32, lines 13-25, p. 33, lines 1-2.

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 10 of 29

the plaintiff failed to produce any direct or circumstantial evidence of an agreement to violate plaintiff's rights and thus failed to offer specific facts that established a genuine issue for trial. *See, e.g., Tebo v. Tebo*, 550 F.3d 492, 496 (5th Cir. 2008) (affirming the district court's grant of summary judgment on plaintiff's § 1983 conspiracy claims for lack of evidence of an agreement) and *Smith v. Riverwalk Entm't LLC*, CIV. A. 05-1416, 2008 WL 3285909 (W.D. La. Aug. 8, 2008) (granting summary judgment on plaintiff's § 1983 conspiracy claim because plaintiff failed to provide action under the color of state law and to demonstrate through reference to specific material facts that an agreement to commit an unlawful act existed among the parties).

Plaintiff has not and cannot show an agreement existed between Breaux and the St. James defendants to violate Plaintiff's rights. Thus, similar to the cases cited above where summary judgment was granted dismissing plaintiff's § 1983 conspiracy claim for lack of evidence of an agreement, so too should summary judgment be granted in this case. In addition there is no evidence that plaintiff's rights were violated by a person who was party to the conspiracy because as explained above there is no evidence of a conspiracy.

## II.    Plaintiff's 42 U.S.C. § 1983 Supervisory Claim Against Sherman Jackson Should be Dismissed

### A. Sherman Jackson Did Not Fail to Supervise Nor is there Evidence of Deliberate Indifference

To the extent Plaintiff is seeking to assert a § 1983 supervisory liability claim against Sherman Jackson, that claim should be dismissed. Supervisory officials cannot be held liable under section 1983 for the actions of subordinates, like Breaux, on any theory of vicarious or *respondeat superior* liability. *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, Plaintiff must show that the conduct of the supervisors denied

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 11 of 29

plaintiff his constitutional rights. *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003). When a plaintiff alleges a failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998); *see Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Smith*, 158 F.3d at 912 (*citing Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation. *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001).

Plaintiff cannot establish any of the elements of a supervisory liability claim. In particular, there is no evidence that Jackson failed to supervise or train Breaux. In addition, Plaintiff cannot satisfy the stringent standard of deliberate indifference. When Plaintiff filed a

citizen complaint against Breaux on July 3, 2012, ten (10) months after the incident, Jackson conducted an investigation.[42] Jackson reviewed the complaint, reviewed relevant police officer files, and found that Breaux acted in good faith.[43] Regardless of whether one agrees or disagrees with Jackson's conclusion exonerating Breaux, Jackson's response to the citizen complaint shows no systematic inattention to the complaint.

In addition, Plaintiff cannot demonstrate a pattern of similar violations and even admits he cannot do so.

Q:    Do you have any evidence or knowledge of any prior acts by the City of Gonzales or its police officers similar to what you claim happened here?

A:    There are a couple of incidents that came in the newspapers that City of Gonzales police violated the rules. They would speed on roads, and some police officers tried to stop them and they think no, we are just doing it. So nothing happens to them.[44]

Thus, Plaintiff's § 1983 supervisory liability claim against Jackson, to the extent he asserts one, should be dismissed.

## B. Alternatively, Sherman Jackson is Entitled to Qualified Immunity

In the alternative, Jackson is entitled to qualified immunity with regard to the Plaintiff's purported § 1983 supervisory liability claim because Jackson can satisfy the second prong of the qualified immunity analysis. Jackson acted objectively reasonable in light of the facts known to him at that time. Upon receipt of the complaint, Jackson conducted an investigation.[45] He reviewed the file and determined that the complaint was unfounded.[46] There is no conduct from which it could be reasonably concluded that Jackson made a deliberate or conscious choice to endanger constitutional rights. Thus, Jackson is cloaked with qualified immunity.

---

[42] Exh. D, Declaration of Sherman Jackson; Exh. A, Deposition of David Breaux, p. 45, lines 11-13.

[43] Exh. D, Declaration of Sherman Jackson.

[44] Exh. E, Deposition of Gopinath Gopalam, p. 131, lines 20-25, p. 132, lines 1-3.

[45] Exh. D, Declaration of Sherman Jackson; Exh. A, Deposition of David Breaux, p. 45, lines 11-13.

[46] Exh. D, Declaration of Sherman Jackson.

**III.    Plaintiff's 1983 Claims Against the City of Gonzales Should be Dismissed**

**A.  Respondeat Superior is Not a Basis for § 1983 Liability**

In Paragraph 81 of the Complaint, Plaintiff alleges "Under the doctrine of respondeat superior, the defendant City of Gonzales and/or the Gonzales City Police Department is fully responsible for the tortious acts of the individual law enforcement employees named herein." To the extent Plaintiff is attempting to impose vicarious liability on the City of Gonzales pursuant to 42 U.S.C. § 1983, the claim must fail. A municipality cannot be held vicariously liable under § 1983 for the constitutional torts of its employees or agents. *Monell v. Dep't. of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2036, 2037, 56 L.Ed.2d 611 (1978). "*Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such a reading." *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). In light of *Monell* and its progeny, if Plaintiff is asserting municipal liability against the City of Gonzales based on vicarious/*respondeat superior* liability, any such claim must be dismissed.

**1.  Failure to Allege a Deprivation of a Constitutional Right**

Plaintiff's § 1983 claim against the City of Gonzales should also be dismissed for failure to allege a constitutional deprivation. Plaintiff has **only** alleged a § 1983 conspiracy claim against Breaux. Plaintiff has failed to state a § 1983 claim against Breaux or the City of Gonzales for deprivation of his rights under the Fourth or Fourteenth Amendments. In order for a civil rights plaintiff to set forth a *prima facie* § 1983 claim, he must allege a deprivation of a federally protected right. *Main v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980).

42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State. . . subjects, or causes to be subjected, any citizen of the

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 14 of 29

> Untied States or other person within the jurisdiction thereof **to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,** shall be liable to the party injured in an action at law
> . . . .
> [Emphasis added].

Plaintiff does not identify **the** constitutional right of his that the City of Gonzales allegedly violated. Instead Plaintiff vaguely states "[t]he acts, customs, and policies of the City of Gonzales and/or the Gonzales Police Department amounted to deliberate indifference to Plaintiff's constitutional rights." (Doc. 1, ¶ 80). Plaintiff also vaguely alleges that the customs and policies of the City of Gonzales "were the cause of the violations of Plaintiff's rights alleged herein," (Doc. 1, ¶ 82), but provides no facts to support those claims. Thus, Plaintiff's § 1983 claim against the City of Gonzales should also be dismissed for failure to allege a constitutional deprivation.

## 2. Failure to Allege and, Alternatively, No Evidence of An Official Policy or Custom

Assuming Plaintiff is asserting that his Fourth and Fourteenth Amendment rights were violated by the City of Gonzales, Plaintiff's § 1983 claim still lacks merit because Plaintiff has failed to identify and, alternatively, has no evidence to support a municipal policy or custom that caused a constitutional violation. The law is clear, municipal liability under § 1983 is limited to constitutional violations caused by a municipality's official policy or custom. *Monell*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037. Accordingly, plaintiff must (1) identify the policy or custom that was followed in this matter; (2) connect the policy or custom to the town or municipality; and (3) show that an injury was the result of the execution of the policy or custom. *Bennett v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016, 105 S.Ct 3476, 87 L.Ed.2d 612 (1985). Plaintiff must identify specifically the policy about which he is complaining and establish that the violation is not an isolated incident but a "pattern of similar

incidents." *Languirand v. Hayden*, 717 F.2d 220, 227 (5th Cir. 1983), *reh. denied*, 721 F.2d 819, *cert. denied*, 104 S.Ct. 2656, 467 U.S. 1215, 81 L.Ed.2d 363 (1983). *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Fraire v. City of Arlington*, 957 F.2d 1268 (5th Cir.), *cert. denied*, 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992). A complaint which fails to identify a custom or policy which caused a constitutional violation cannot survive a summary judgment.

Plaintiff attempts to allege a municipal policy in the following paragraphs of the Complaint wherein he alleges the City of Gonzales and/or the Gonzales City Police Department: (1) "inadequately and improperly investigate[d] citizen complaints of police misconduct" (Doc. 1, ¶ 73); (2) "tolerate[d] known misconduct by Defendant Officers" (Doc. 1, ¶ 74); (3) "inadequately supervise[d] and train[ed] it police offers" (Doc. 1, ¶ 76); (4) did "not require appropriate in-service training or retraining of officers who were known to have engaged in police misconduct." (Doc. 1, ¶ 77). However, these conclusory allegations do not state an official policy, and even if they do, Plaintiff has no evidence to support these allegations.

### a. No Evidence to Support Plaintiff's Purported Municipal Liability Claim Based on Improper Investigation of Citizen Complaints

In order to hold a city liable under § 1983 for inadequate investigation, discipline, or termination, two fundamental requirements must be satisfied. *Piotrowski v. City of Houston*, 237 F.3d 567, 581-582 (5th Cir. 2001). First, the municipal policy must have been adopted with "deliberate indifference" to its known or obvious consequences. Second, the municipal policy must be the "moving force" behind the constitutional violation. *Snyder v. Trepagnier*, 142 F.3d 791, 795 (5th Cir. 1998). Deliberate indifference requires more than a showing of simple or even heightened negligence to make a city liable. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 1390, 137 L. Ed. 2d 626 (1997). A plaintiff should

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 16 of 29

"demonstrate a pattern of violations," *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003), such that the failure to discipline "reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights." *Snyder*, 142 F.3d at 799. To prove deliberate indifference, a plaintiff must demonstrate " 'at least a pattern of similar violations' arising from training that is so clearly inadequate as to be 'obviously likely to result in a constitutional violation.' " *Burge*, 336 F.3d at 370 (*citing Thompson*, 245 F.3d at 459).

Plaintiff has no evidence that the City of Gonzales had a policy of inadequate investigation or that it was pursued with deliberate indifference. Plaintiff testified, "I did not see or look at any policies or anything that they have per se, but from what happened on that day, and what the Police Department is justifying what they did is right, and that makes me believe that they have policies and procedures that violates constitutional rights of the persons."[47]

In fact, evidence exists to the contrary. When Plaintiff filed a citizen complaint against Breaux on July 3, 2012, Jackson reviewed the complaint, reviewed relevant police officer files, and found that Breaux acted in good faith.[48] Regardless of whether one agrees or disagrees with Jackson's conclusion exonerating Breaux, Jackson's actions toward the citizen complaint shows no systematic inattention to the complaint.

In addition, Plaintiff cannot demonstrate a pattern of similar violations and even admits he cannot do so.

> Q:    Do you have any evidence or knowledge of any prior acts by the City of Gonzales or its police officers similar to what you claim happened here?
> A:    There are a couple of incidents that came in the newspapers that City of Gonzales police violated the rules. They would speed on roads, and some police officers tried to stop them and they think no, we are just doing it. So nothing happens to them.[49]

---

[47] Exhibit E, Deposition of Gopinath Gopalam, p. 130, lines 19-25, p. 131, lines 1-18.
[48] Exh. D, Declaration of Sherman Jackson.
[49] Exhibit E, Deposition of Gopinath Gopalam, p. 131, lines 20-25, lines 132, lines 1-3.

It is nearly impossible to impute lax disciplinary policy to the City without showing a pattern of abuses that transcends the error made in a single case. *Bryan County*, 520 U.S. at 409-11, 117 S.Ct. at 1391. See *Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001), where the Fifth Circuit similarly found that the plaintiff could not establish a city policy of inadequate investigation into police officer wrongdoing and inadequate discipline of police officers. For these reasons, the municipal liability claim should be dismissed.

### b. No Evidence to Support Plaintiff's Purported Municipal Liability Claim Based on Tolerating Known Misconduct

Plaintiff's allegation that the City of Gonzales tolerated known misconduct is nothing more than a mere negligence claim, that additionally lacks any factual basis. *See Daniel v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed 2d 662 (1986) (mere "negligence" is insufficient to establish Section 1983 municipal liability). In addition, Plaintiff has no evidence to support municipal liability based on a claim of failure to act. For these reasons, Plaintiff's municipal liability claim must be dismissed.

### c. No Evidence to Support Plaintiff's Purported Municipal Liability Claim Based on Improper Supervision and Training

The Fifth Circuit has stated that in cases involving claims of failure to train or supervise, the plaintiff must show: (1) an actual failure to train or supervise; (2) a causal connection between this failure and the violation of his rights; (3) that the failure amounted to deliberate indifference. *Doe v. Taylor Independent School District*, 15 F.3d 443, 452-53 (5th Cir. 1994); *Thompson v. Upshur County, Texas*, 245 F.3d 447, 459 (5th Cir. 2001). The Fifth Circuit has also explained that proof of a single instance of misconduct will not normally sustain a plaintiff's claim that such a lack of training violated his constitutional rights, and the training's inadequacy

must be obvious and obviously likely to result in a constitutional violation. *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 286-87 (5th Cir. 2002).

Here, Plaintiff has not satisfied any of the elements set forth by the Fifth Circuit. Plaintiff has not shown that there was an actual failure to supervise, but merely speculates that such a failure has occurred by pointing to a single incident involving the City of Gonzales and the Plaintiff. In addition, Plaintiff has not shown a violation of his rights that was causally connected to any alleged failure to supervise, or that any such failure was the result of deliberate indifference to his rights.

> Q: What about paragraph 76…What evidence do you have that the city and/or the Police Department inadequately supervised or trained its officers?
> A: Just by evidence of what the police officer did and why he was not trained to know what to do and what not to do. That's-- by the events of what happened on the incident.
> Q: Do you have knowledge of any prior actions that predate the September 1, 2011, where the City of Gonzales inadequately supervised or trained it officers?
> A: Not any particular incident. I'll put close thing.[50]

Because Plaintiff's conclusory allegations regarding supervision are insufficient to establish a § 1983 claim, this claim must be dismissed. The City of Gonzales has discharged its summary judgment burden of "pointing out" to this Court an absence of evidence to support the Plaintiff's purported § 1983 municipal liability claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986).

## IV. No Genuine Dispute of Any Material Fact Exists as to Plaintiff's State Law Claims

### A. Plaintiff's Negligence Claim against David Breaux Should be Dismissed

Plaintiff alleges "Defendant Officer Breaux and Certain Other Unknown Officers of the City of Gonzales Police Department failed to exercise due care and failed to properly analyze the

---

[50] Exh. E, Deposition of Gopinath Gopalam, p. 137, lines 15, 24-25, p. 138, lines 1-11.

facts clearly known to them and, by doing so, they violated Plaintiff's rights under Louisiana." (Doc. 1, p. 16, para. 84). Plaintiff never named "other unknown officers of the City of Gonzales Police Department" thus his negligence claim is limited to the actions of Breaux.

Plaintiff is required to prove the following elements: (1) the defendant had a duty to conform its conduct to a specific standard (the duty element); (2) the defendant failed to conform its conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause in fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). *Roberts v. Benoit*, 605 So.2d 1032, 1051 (La. 1992) (on rehearing).

Louisiana law mandates that a plaintiff bear the burden of proving each element of his negligence claim, and a negative answer to any of the elements prompts a determination of no liability, and is fatal to his right to recover. *Joseph v. Dickerson*, 99-1046 and 99-1188, pp. 6-7 (La. 1/19/00), 754 So.2d 912, 916. In this case, Plaintiff has no evidence to prove that Breaux breached a duty he may have owed to Plaintiff. A party moving for summary judgment may simply point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action or defense. Therefore, summary judgment is appropriate.

As more fully explained above, there is no evidence that Breaux breached a duty to Plaintiff. Koch advised Breaux that all of the buildings belonged to St. James and that Plaintiff was not allowed back into the building.[51] The people that Breaux observed at Cabela's and believed were board members going into the board meeting, were the same people Breaux

---

[51] Exh. A, Deposition of David Breaux, p. 21, lines 6-15, p. 37, lines 1-21, p. 29, lines 8-10.

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 20 of 29

observed around the office.[52]  Thus, the actions that Breaux took on September 1, 2011 did not breach any duties he may have owed to Plaintiff.

In the alternative, if this Court determines there is a genuine dispute as to a material fact with respect to Plaintiff's negligence claim against Breaux, this claim should *still* be dismissed because Breaux is entitled to discretionary immunity pursuant to La. R.S. § 9:2798.1 which grants statutory immunity for policy-making or discretionary acts or omissions of public entities or their officers.  La. R.S. § 9:2798.1 provides in pertinent part that:

> B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
> C. The provisions of Subsection B of this Section are not applicable:
> (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policymaking or discretionary power exists; or
> (2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.

The Louisiana Supreme Court has adopted a two-part test for determining when the discretionary function exception applies.  *Alpha Alpha, Inc. v. Southland Aviation*, 96-928 (La. App. 3rd Cir. 7/9/97), 697 So.2d 1364, (*citing Archon v. Union Pac. R.R.*, 94-2728, 94-2743 (La. 6/30/95), 657 So.2d 987).  First, the court must determine whether the government's action was a matter of choice.  *Id.*  If the action was not a matter of choice because some statute, regulation, or policy prescribed a specific course of action to follow, then the exception does not apply and there is no immunity.  *Id.*  If, on the other hand, the action involved an element of choice or discretion, then the court must determine whether that discretion is the type that is shielded by

---

[52] *Id.* at p. 32, lines 13-25, p. 33, lines 1-2.

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 21 of 29

the exception because it is grounded in social, economic, or political policy. *Id.* It is only those actions that are based on public policy that are protected by La. R.S. § 9:2798.1. *Id.*

In *Kniepp v. City of Shreveport*, 609 So.2d 1163 (La. App. 2nd Cir. 1992), *writ denied*, 613 So.2d 976 (La. 1993), similar to the case at bar, the owners of property damaged in a riot asserted that police conduct caused their losses. The court found that the police chief's order to withdraw from the area of the disturbance, leaving the plaintiff's stores exposed to damage by rioters, was a discretionary policy choice to protect life over property. *Id.* at 1168. Therefore, discretionary immunity applied to shield that city from liability. Additionally, in *Shepard v. Bradford*, 98-172 (La. App. 3rd Cir. 11/4/98), 721 So.2d 1049, 1052, the court held that decisions concerning the patrol practices of a city police department are a matter of choice because no statute, regulation, or policy proscribes the times or locations for patrols.

Similarly, discretionary immunity should apply to Breaux's actions. Plaintiff claims that Breaux's act of prohibiting him from entering the building caused damage to his office and property. First, Plaintiff can point to no statute, regulation, or policy that proscribes what course of action is to be followed when faced with a situation as the one presented in this matter. Plaintiff has alleged that Breaux failed to exercise due care and failed to properly analyze the facts clearly know to him. At the time of the incident, Breaux thought that all of the buildings belonged to St. James and that Plaintiff was not allowed back into the building.[53] Further, the people that Breaux observed at Cabela's and believed were board members going into the board meeting, were the same people Breaux observed around the office.[54] The only information Breaux had to the contrary was Plaintiff's own words that he owned the building. Breaux had no lease/rental agreement to review and no other Gonzales City Police Department policies to

---

[53] Exh. A, Deposition of David Breaux, p. 21, lines 6-15, p. 37, lines 1-21, p. 29, lines 8-10.
[54] *Id.* at p. 32, lines 13-25, p. 33, lines 1-2.

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 22 of 29

follow in this situation. Thus, the actions undertaken by Breaux on September 1, 2011 were not only reasonable under the circumstances, but were clearly discretionary. No such statute, regulation or policy specifically prescribed a course of action for Breaux to undertake.

Second, Breaux prohibited Plaintiff, who had just been terminated, from entering the office in order to maintain safety in a situation that could have easily escalated. *See, e.g.,* *Kniepp*, 609 So.2d at 1168. Breaux made a "discretionary choice of policy" to protect the building, the contents within the office and the numerous employees therein still actively working. *Id.* Breaux's legitimate governmental objective was to maintain safety and order. The determinations made by Breaux on September 1, 2011 were within the realm of discretionary functions grounded in public policy. Breaux stuck to the directives he was given earlier that day and attempted to maintain the situation in a safe manner for all persons involved. Thus, Breaux is entitled to discretionary immunity from Plaintiff's negligence claim.

**B. Plaintiff's Intentional Infliction of Emotional Distress Claim Should be Dismissed**

To recover for intentional infliction of emotional distress, a plaintiff must establish: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991). Plaintiff's intentional infliction of emotional distress claim should be dismissed because there is no evidence of an intent to inflict emotional distress or extreme and outrageous conduct.

The standard for establishing this tort is very high. The conduct must be **so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.** *Id.* (emphasis

added). The plaintiff must establish truly outrageous conduct to prevail on such a claim. The Louisiana Supreme Court has held that "one who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." *White*, 585 So.2d at 1209.

Plaintiff alleges "[a]s a direct and proximate consequence of the unconscionable acts and omissions on the part of the Defendants, as described above, the Defendant Officers intentionally inflicted emotional distress upon the Plaintiff." (Doc. 1, Para. 86). However, Plaintiff cannot establish a claim for intentional infliction of emotional distress because Plaintiff's own deposition testimony establishes that Breaux's conduct was not extreme or outrageous.

Q:  Okay. So if Officer Breaux says that he told you that you could be arrested if you did not leave the premises, then you agree that that is what he told you?

A:  I – to my knowledge, to my recollection, and he said if I do not leave the premises, he could arrest me and I could go to jail.

Q:  Okay. Did Officer Breaux ever place his hands on you?

A:  No, ma'am

Q:  Did Officer Breaux ever tell you that you were under arrest?

A:  No, ma'am.[55]

\*\*\*

Q:  Backing up to whenever you and Officer Breaux were interacting outside of the building, did Officer Breaux ever raise his voice.

A:  The last time when he threatened me with the arrest in jail, that's when he raised a voice a little bit, but not, not the voice that really shake me up; the body language. You know, he was just standing straight, but on the other hand, when he was telling that, he just went his hands like this (indicating). And there is a gun on his- what do you call – waist. So that shook me up, and I just walked out – walked away.

Q:  So you are saying when Officer Breaux put his hands on his hip, that shook you up?

A:  Yes, ma'am.

Q:  Why?

A:  Because I was afraid that he's going to do what he said.

Q:  You were afraid he was going to do what?

---

[55] Exh. E, Deposition of Gopinath Gopalam, p. 86, lines 5-17.

A:    Arrest me.

Q:    You mentioned he had a gun on his hip. Did he make any motion towards his gun?

A:    No, ma'am.

Q:    Were you afraid he was going to unholster his gun on you?

A:    I was afraid he was going to arrest me; that's what my afraid is.

Q:    But he never arrested you, right?

A:    No ma'am.[56]

Furthermore, Plaintiff has no evidence Breaux intended to inflict emotional distress upon Plaintiff. Breaux testified "I didn't want to put the man in jail. He just got terminated, and I'm sure he felt bad. But, unfortunately, being a law enforcement officer, he could have went to jail, but I didn't threaten him. He left on his own. I didn't put my hands on him or anything."[57] Accordingly, any such intentional infliction of emotional distress claim should be dismissed.

## IV.    Standard for Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" on all or part of any claim. Fed. R. Civ. P. 56(a). "Properly used, summary judgment helps strip away the underbrush and lay bare the heart of the controversy." *Kennedy v. Mesa, Inc.*, 1998 WL 182670, 1 (W.D. La. 1998).

In *Celotex Corp. v. Catrett*, the Supreme Court recognized that summary judgment may be granted when a party fails to come forward with sufficient facts to establish the existence of a genuine issue[58] as to an element essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Supreme Court stated:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion,

---

[56] Exh. E, Deposition of Gopinath Gopalam, p. 90, lines 7-25, p. 91, lines 1-10.

[57] Exh. A, Deposition of David Breaux, p. 39, lines 24-25, p. 40, lines 1-14.

[58] Pursuant to the 2010 amendments to the language of Federal Rule of Civil Procedure Rule 56 "genuine issue" is now "genuine dispute." The stylistic change in the language has no effect on the relevant Louisiana cases used in support of this motion for summary judgment.

Case 3:12-cv-00542-JJB-SCR   Document 38-2   09/16/13   Page 25 of 29

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue[59] as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. **The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make sufficient showing on an essential element of her case with respect to which she has the burden of proof.**

*Id.* at 322-23. [Emphasis added].

The court in *Celotex* noted further that the burden on the moving party of demonstrating the absence of a genuine issue[60] of material fact may be discharged by "pointing out" to the district court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. Once the mover meets this initial burden, if the non-moving party either cannot, or fails to, make a showing sufficient to establish the existence of all elements essential to her case that she will bear the burden of proving at trial, summary judgment is appropriate and should be rendered against the non-moving party.

The nonmovant may not rest on the mere allegations of his pleadings as a means of establishing a genuine issue[61] of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). He must designate specific facts supported by discovery or affidavit showing that there is a genuine issue[62] for trial. *Celotex*, 477 U.S. at 323. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). "[A] mere scintilla [of evidence] is not

---

[59] *Id.*
[60] *Id.*
[61] *Id.*
[62] *Id.*

enough to defeat a motion for summary judgment." *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

**V.     This Court Should Dismiss the State Law Claims Under its Pendent Jurisdiction**

Under the doctrine of pendent jurisdiction, a federal court has the constitutional power to hear a state law claim if it is closely related to another federal claim. *Robertson v. Neuromedical Center*, 161 F.3d 292 (5th Cir. 1998) (*citing United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)). Pendent jurisdiction has its basis in the interests of both the parties and the judicial system in having all of the claims between litigants, both federal and state, resolved in one suit. *Joseph v. Zachary Manor Nursing Home*, 729 F.Supp 41 (M.D. La. 1990), *affirmed*, 929 F.2d 697 (5th Cir. 1991), *cert. denied*, 502 U.S. 912, 112 S.Ct. 310, 116 L.Ed.2d 253 (1991). In making the decision whether to hear supplemental claims, the court must consider both the statutory provisions of 28 U.S.C. §1367(c) and the balance of the relevant factors of judicial economy, convenience, fairness and comity. *Bass v. Parkwood Hospital*, 180 F.3d 234 (5th Cir. 1999).

The state claims here involve no novel or complex state law issues. *See* § 1367(c)(1). They are essentially companion state claims to the federal constitutional claims. Because they are similar, the state claims in this case do not substantially predominate over the federal claims in proof requirements, remedies, or issues. *See* § 1367(c)(2); *Gibbs*, 86 S.Ct. at 1139. The elements of the state claims do not require the fact finder to consider any more factual issues than those needed to resolve the federal claims. Further, there are no "exceptional circumstances" which present "compelling reasons" for declining supplemental jurisdiction. *See* § 1367(c)(3) and (4).

Judicial economy, convenience, and fairness dictate that all of Plaintiff's claims arising out of the September 1, 2011 incident should be resolved in one judicial proceeding. The state claims can be readily decided on the facts at issue in the federal claims. Furthermore, trial on the issues together would not engender confusion for a jury. This Court can and should retain jurisdiction over these state law claims against the defendants in order to affect an orderly resolution to this litigation and, therefore, for the reasons stated above, should dismiss the state law claims.

## CONCLUSION

For the foregoing reasons, the City of Gonzales, Sherman Jackson and David Breaux are entitled to summary judgment, dismissing all claims against them with prejudice, at Plaintiff's costs.

Respectfully submitted,

s/ Katie D. Bell
Bradley C. Myers (#1499) (T.A.)
Brad.Myers@keanmiller.com
Katie D. Bell (#29831)
Katie.Bell@keanmiller.com
Amanda M. Collura (#33777)
Amanda.Collura@keanmiller.com
KEAN MILLER LLP
II City Plaza, 400 Convention Street, Suite 700
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70802
Telephone: (225) 387-0999
Fax: (225) 388-9133

**Attorneys for the City of Gonzales, Sherman Jackson, and David Breaux**

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2013 a true and correct copy of the City of Gonzales, Sherman Jackson, and David Breaux's Memorandum in Support of Motion for Summary Judgment Seeking Dismissal of Plaintiff's Federal and State Claims was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

J. Christopher Alexander, Sr.
Attorneys and Counselors at Law
3751 Government Street, Suite A
Baton Rouge, LA 70806

Erin W. Lanoux
Robert Ryland Percy, III
Percy, Lanoux & Mumphrey
712 N. Burnside Avenue
Gonzales, LA 70737

Sidney A. Marchand, III
320 Chetimaches Street
Donaldsonville, LA 70346-0669

Pegram J. Mire, Jr.
1212 E Worthy St Ste A
Gonzales, LA70737
(225) 621-3219

Thomas Lockwood
12345 Perkins Rd., Bldg. 2, Suite 201
Baton Rouge, LA 70810

Baton Rouge, Louisiana this 16th day of September, 2013.

s/ Katie D. Bell