UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GOPINATH GOPALAM

CIVIL ACTION

VERSUS

NO. 12-542-JJB

SMITH ET AL

## RULING ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

These matters are before the Court on several motions for summary judgment brought by the Defendants.[1] The first is a Motion for Summary Judgment Seeking Dismissal of all of Plaintiff's Federal and State Claims (doc. 38) brought by City Defendants. Plaintiff, Gopinath Gopalam ("Gopalam") has filed an opposition (doc. 45), to which City Defendants have filed a reply (doc. 50). The second is a Motion for Partial Summary Judgment Based Upon Plaintiff's Claims for Damages Allegedly Sustained by His Business Entities (doc. 39). Gopalam has filed an opposition (doc. 46) and City Defendants have filed a reply (doc. 51). Richard "Rick" Bennett ("Bennett") has filed a Motion for Summary Judgment Seeking Dismissal of all of Plaintiff's Claims (doc. 41) to which Gopalam has filed an opposition (doc. 47). Bennett has filed a reply (doc. 52).[2] Private Defendants and Bennett have jointly filed a Motion for Partial Summary Judgment Based on Plaintiff's Claims for Damages Sustained by His Business Entities (doc. 42). Gopalam has filed an opposition (doc. 48), to which the Private Defendants have filed a reply (doc. 53).[3] Finally, the Private Defendants have filed a Motion for Summary Judgment Seeking Dismissal of All Claims Against Them (doc. 43). Gopalam has filed an opposition (doc.

---

[1] The Defendants in this matter are the City of Gonzales, Sherman Jackson, and David Breaux (collectively referred to herein as the "City Defendants"); Richard "Rick" Bennett; and St. James Behavioral Health Hospital, Inc., Wendell B. Smith, Dr. Rama Kongara, M.D., and Dr. Lance Bullock, M.D. (collectively referred to herein as the "Private Defendants").

[2] Bennett also adopts the arguments and evidence presented in the City Defendants' motion for summary judgment (doc. 38) and reply (doc. 50).

[3] Bennett and the Private Defendants adopt the legal arguments and evidence presented in the City Defendants' motion (doc. 39) and reply (doc. 51). Gopalam adopts his motion (doc. 46) in opposition.

1

49) and the Private Defendants have filed a reply (doc. 54).[4] Oral argument is unnecessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

I. Background

This action arises from an incident on or about September 1, 2011, when several of the named defendants allegedly burglarized Gopalam's place of business, destroying physical property and destroying and/or stealing protected health information, computer and electronic data, financial records, and associated devices, such as computer hardware. (Doc. 1). Gopalam alleges that during the burglary, members of the City of Gonzales Police Department, acting under color of law, aided and abetted the burglary and theft. Gopalam has instituted a 42 U.S.C. § 1983 action against the defendants, alleging that the defendants were acting in concert to deprive Gopalam of his Fourth and Fourteenth Amendments rights. Gopalam has further asserted that the City of Gonzales and/or the Gonzales Police Department[5] "developed and maintained policies or customs exhibiting deliberate indifference" to citizens' constitutional rights, which in turn, caused Gopalam's rights to be violated. (Doc. 1, at 14). Moreover, Gopalam asserts claims for municipal liability, negligence, and intentional infliction of emotional distress.

The following facts are either undisputed or taken as true based upon evidence submitted by the non-movant plaintiff. Sometime before September 1, 2011, a representative of St. James Behavioral Hospital, Inc. ("St. James") called the Gonzales Police Department to request that the Department provide St. James with a police officer that would provide security and keep the peace during an employee termination. The representative informed the Department that the

---

[4] The Private Defendants adopt the arguments and evidence presented in both the City Defendants and Bennett's motions for summary judgment (docs. 38 and 41) and reply (doc. 50). Gopalam adopts his oppositions (docs. 45 and 47) to the City Defendants motion and Bennett's motion.
[5] The Gonzales Police Department has not been made a defendant in this lawsuit.

2

Case 3:12-cv-00542-JJB-SCR    Document 55    02/06/14    Page 2 of 16

employee termination would occur on September 1, 2011. Officer David Breaux ("Breaux") volunteered to work the extra duty detail and was told that his contacts were Wendell Smith ("Smith") and Karl Koch ("Koch"). Officer Breaux was told to meet a contact person at a local gas station. When he arrived at the gas station, Smith was there waiting for him and informed him that Koch was waiting for him at the Cabela's parking lot. Once at Cabela's, Koch explained to Officer Breaux that his job was to keep the peace after Gopalam was terminated and to escort Gopalam to his car along with Koch. In addition to Koch, Breaux observed others in the parking lot who he believed were members of St. James' board of directors. After the meeting, Officer Breaux followed Koch to St. James Hospital.

That day, Gopalam met with Bennett, the hospital administrator, and Dr. Lance Bullock in Bennett's office to discuss patient care at St. James Hospital. At some point during the meeting, Dr. Rama Kongara came into the meeting and asked Bennett to leave. Bennett then walked over to the building where Apollo employees worked and informed them that Gopalam had been terminated and to answer any questions that they may have. Afterwards, Bennett returned to the hospital and continued with his duties.

After Gopalam's termination, he was asked to leave the premises. Officer Breaux and Koch began to escort Gopalam from the building to his car as previously discussed. While walking to the car, Gopalam stopped and said that he needed to go into his office. Officer Breaux told Gopalam that he could not go back onto the premises and asked him several times to leave. Instead of leaving, Gopalam pulled out his cell phone and called 911 to report the incident. Breaux informed the police dispatcher that he was on the scene and that there was no need to send other officers. After being asked several more times to leave the premises, Gopalam complied. Officer Breaux was paid for his services.

3

On July 3, 2012, Gopalam filed a formal complaint against Officer Breaux for his actions during the termination on September 1, 2011. Chief Sherman Jackson ("Jackson") conducted an investigation into the complaint's allegations and concluded that Officer Breaux acted in good faith. On September 4, 2012, Gopalam filed his complaint with the Court. In it, he asserts the following claims: (1) a § 1983 civil conspiracy claim against Officer Breaux, Bennett, and the Private Defendants (2) a §1983 claim against Chief Jackson on a theory of supervisory liability for failure to train or supervise; (3) a §1983 claim against the City of Gonzales on several theories of municipal liability; (4) a state law negligence claim against the City of Gonzales; (5) and a state law intentional infliction of emotion distress claim against all Defendants.

II.  Discussion

   A.  **Summary Judgment Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact." FED. R. CIV. P. 56(a). The party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the burden at trial rests on the non-moving party, the moving party need only demonstrate that the record lacks sufficient evidentiary support for the non-moving party's case. *Id.* The moving party may do this by showing that the evidence is insufficient to prove the existence of one or more essential elements of the non-moving party's case. *Id.* A party must support its summary judgment position by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine dispute." FED. R. CIV. P. 56(c)(1).

Although the Court considers evidence in a light most favorable to the non-moving party, the non-moving party must show that there is a genuine issue for trial. *Anderson v. Liberty*

4

*Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Conclusory allegations and unsubstantiated assertions will not satisfy the non-moving party's burden. *Grimes v. Tex. Dep't of Mental Health*, 102 F.3d 137, 139–40 (5th Cir. 1996). Similarly, "[u]nsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence." *Larry v. White*, 929 F.2d 206, 211 n.12 (5th Cir. 1991). If, once the non-moving party has been given the opportunity to raise a genuine fact issue, no reasonable juror could find for the non-moving party, summary judgment will be granted for the moving party. *Celotex*, 477 U.S. at 322-23.

### B. Civil Conspiracy Claim

To succeed on a § 1983 claim for civil conspiracy, the plaintiff must prove (1) the existence of a conspiracy that involves state action and (2) the deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) *abrogated on other grounds by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992). Additionally, the plaintiff must establish that the defendants agreed to commit an illegal act. *Hey v. Irving*, 161 F.3d 7, 7 (5th Cir. 1998) (citing *Arsenaux v. Roberts*, 726 F.2d 1022 (5th Cir. 1982)). This can be done by showing that the acts of the alleged coconspirators demonstrate a "unity of purpose, common design, and understanding, or meeting of the minds in an unlawful arrangement." *Bayou Fleet, Inc. v. Alexander*, 68 F.supp.2d 734, 745 (E.D. La. 1999) (quotations omitted). Involvement in a conspiracy is a circumstance in which a private individual may be considered to have acted under state law. *Ballard v. Wall,* 413 F.3d 510, 518 (5th Cir. 2005). To be liable, the plaintiff must show that the private individual "was a willful participant in joint activity with the state or its agents." *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (citations and quotations omitted). Finally, to succeed on a claim

5

for civil conspiracy, the plaintiff cannot rely on mere conclusory allegations; rather he must make reference to material facts. *Brinkman v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986).

### 1. The City Defendants

City Defendants argue that they are entitled to summary judgment on Gopalam's civil conspiracy claim because Officer Breaux is entitled to qualified immunity. In the alternative, the City Defendants argue that Gopalam has not produced any direct or circumstantial evidence of an agreement to violate Gopalam's constitutional rights. In opposition, Gopalam argues that Officer Breaux is not entitled to qualified immunity because he did not act reasonably under the circumstances. Citing, Fifth Circuit law, he argues that Officer Breaux's actions were unreasonable because he did not investigate whether or not Gopalam had an ownership interest in the property and therefore a legal right to be there. Gopalam further argues that he need not prove that there was an actual agreement; rather he must point to circumstantial evidence which suggests that an agreement existed. Gopalam further asserts that Officer Breaux's actions and omissions suggest that he had a "unity of purpose" to deprive him of his constitutional rights. In reply, City Defendants argue that Gopalam cites to easily distinguishable case law, relies upon conclusory allegations, and does not point to any evidence in the record to support his claim.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This protection extends to "all but the plainly incompetent or those who knowingly violate the law." *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997) (internal quotations omitted). When evaluating whether or not a public official is entitled to qualified immunity, a court must determine (1) whether the plaintiff has alleged the violation of a constitutional right and (2)

6

whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question. *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). A court may use its discretion when deciding which prong of the qualified immunity analysis to first address. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Addressing the second prong of the qualified immunity analysis, the Fifth Circuit has stated, "The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler,* 242 F.3d 307, 312 (5th Cir. 2001) (quoting *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000)). A defendant is considered to have acted reasonably unless at the time and under the circumstances, all other police officers would have known that the challenged conduct violated a constitutional right. *Pierce*, 117 F.3d at 871.

The City Defendants argue that Officer Breaux acted reasonably under the circumstances. They contend that it was reasonable to believe that Officer Breaux was not violating Gopalam's Fourth and Fourteenth Amendment rights when he prevented Gopalam from reentering the building and telling dispatch not to send backup given that Officer Breaux was told that St. James owned the property and that Gopalam was not allowed to return inside. Officer Breaux was not presented with any evidence indicating that Gopalam had a right to reenter the premises at the time of their interaction and had no reason to know of such a right.

In response, Gopalam argues that Officer Breaux's conduct was unreasonable because he failed to duly investigate the veracity of Gopalam's right to enter the premises. Relying upon *Cozzo v. Parish of Tangipahoa*, CIV. A. 98-2728, 2000 WL 6280 (E.D. La. Jan. 3, 2000) *aff'd in part, rev'd in part sub nom, Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d

7

273 (5th Cir. 2002), Gopalam asserts that Officer Breaux's decision not to determine the validity of his assertions demonstrated an abject disregard of his constitutional rights. In reply, the City Defendants argue that *Cozzo* is inapposite to the present case and does not raise a genuine dispute as to Officer Breaux's entitlement to qualified immunity. The Court agrees.

*Cozzo* involved the misreading of a judge's TRO by a sheriff and the sheriff's deputy. There, after filing for divorce, the husband secured a TRO that was issued to prevent his estranged wife from coming to his residence and place of business. 279 F.3d at 279. After securing the TRO, the deputy was sent to serve the order on the wife. *Id.* The deputy met the wife at the home once the wife returned home from work and informed her that the TRO required her to vacate the premises immediately. *Id.* The wife protested, explaining to the deputy that the residence was her separate property. She then directed his attention to the TRO, which did not contain the word eviction anywhere in its contents, to the papers attached thereto which showed that the residence was separate property and that the house belonged to her. *Id.* at 285. Despite this information, the deputy responded: "My supervisor says it doesn't matter what the papers say, you still have to go." *Id.*

In affirming the trial court's decision not to grant the deputy qualified immunity, the Fifth Circuit found that "Captain People's clearly stated abject disregard for and Deputy Joiner's patently unaroused curiosity about 'what the papers say' undercut Deputy Joiner's claim that he acted unreasonably by evicting Ms. Cozzo." *Id.* This was especially so in light of the fact that the TRO stated "that a temporary restraining order issue ... directed to ... Mary Dimm Cozzo, restraining, enjoining, and prohibiting the defendant, her agents or assigns ... from communicating with the petitioner in any way, *from going to his place of residence or employment,* or accosting him in any fashion." *Id.* Here, Officer Breaux relied upon the

8

Case 3:12-cv-00542-JJB-SCR   Document 55   02/06/14   Page 8 of 16

representations of Koch, St. James' legal counsel, and believed that those present, including those he believed to be members of the board, had the authority to terminate Gopalam's employment and remove him from the premises. Officer Breaux was not presented with any contrary evidence, let alone clear evidence, of Gopalam's purported ownership at the time of the event in question. Thus, unlike the facts presented in *Cozzo*, there was nothing but Gopalam's protestations, which were expected under the circumstances, to pique Officer Breaux's curiosity.

Finding that *Cozzo* is inapposite to the present matter, the Court must determine from the facts presented whether Officer Breaux was reasonable in his belief that he was not violating Gopalam's constitutional rights. The Court finds that he was. He reasonably believed that the representative from St. James who contacted the police department to secure his services had the authority to do so. He also reasonably relied upon the representations of St. James' legal counsel that St. James was the owner of the property. He followed the directions of those he believed had the authority to terminate Gopalam's employment and prohibit him from returning into the building. There were no indications that Koch or the others present lacked the authority to terminate Gopalam's employment or exclude him from the building. Furthermore, Gopalam's protestations focused on a need to reenter the building which Officer Breaux reasonably believed he could not do as a terminated employee. Moreover, the Court is not directed to any evidence in the record to show that Officer Breaux's statement to the dispatcher was unreasonable under the circumstances. In fact, Gopalam has failed to point to any evidence in the record to demonstrate that Officer Breaux acted unreasonably, incompetently, or with knowledge that he was violating Gopalam's constitutional rights.

For the reasons herein stated, the Court finds that there is no genuine issue as to whether Officer Breaux acted reasonably under the circumstances. He was neither incompetent nor did

9

Case 3:12-cv-00542-JJB-SCR   Document 55   02/06/14   Page 9 of 16

he knowingly violate Gopalam's constitutional right. Therefore, the Court finds that Officer Breaux is entitled to the protection afforded to public officials by qualified immunity.

### 2. Bennett and the Private Defendants

Bennett and the Private Defendants argue that there is no evidence of the existence of an agreement between themselves and Officer Breaux to deprive Gopalam of his constitutional rights. Bennett also argues that he was not involved in the meeting with Officer Breaux and that in any event, a private citizen cannot deprive someone of their constitutional rights. In response to Bennett's contentions that he cannot be held liable for civil conspiracy, Gopalam argues that Bennett can be held liable as a member of the larger conspiracy. The argument follows, that as a member of the larger conspiracy, his contact with Officer Breaux can be imputed to him based upon the contact between Breaux and other members in the conspiracy. Gopalam also contends that Bennett's behavior is enough to demonstrate his complicity in the conspiracy. In reply, Bennett argues that Gopalam cites to distinguishable case law, relies upon conclusory allegations, and does not point to any evidence in the record to support his claim.

At the outset, it is important to reiterate that a private individual can be liable for a civil conspiracy if it is shown that he was a willful participant in joint activity with state actors. *Priester*, 354 F.3d at 420. Furthermore, private persons can be held liable for civil conspiracy even if the public official is immune from liability. *Henzel v. Gerstein*, 608 F.2d 654, 658 (5th Cir. 1979). The essence of the alleged conspiracy is that Bennett and the Private Defendants conspired with Officer Breaux to illegally evict Gopalam from his place of business. This claim must fail for two reasons.

First, there is scant, if any evidence, Bennett had any personal involvement with the allegedly wrongful conduct. "Under section 1983 there can be no liability, much less a

10

conspiracy between individuals that had no personal involvement in the allegedly wrong conduct." *Bayou Fleet, Inc. v. Alexander*, 68 F.Supp.2d 734, 745 (E.D. La. 1999). Bennett asserts and Gopalam does not deny that Bennett did not have contact with any member of law enforcement. Gopalam contends, without citing to any case law, that Bennett's involvement on the periphery is enough to impose liability. Here, Bennett's alleged participation in the periphery was him carrying out his employment obligations as the hospital administrator. His actions do not show that he was engaged in joint activity with a state actor he never met, but rather that he was executing his duties as directed by his employer.

Similarly, Gopalam has failed to adduce any evidence that the named Private Defendants, with the exception of Smith, had any contact or personal involvement with Officer Breaux. As to Smith, he was named as a contact person; met briefly with Officer Breaux at the gas station and directed him to meet Koch at the Cabela's parking lot; and paid Officer Breaux at the end of his duty. However, this does not rise to the level of joint activity as "a private party does not act under color of law when…a private individual did no more than prompt agents of the state to use the power the state gave them." *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 388 (5th Cir. 1985).

Second, Gopalam relies upon conclusory allegations that a conspiracy existed. He points to no specific facts tending to show that Bennett and the Private Defendants acted with a unity of purpose or had come to a meeting of the minds to deprive him of his constitutional rights. Gopalam relies upon *Crowe v. Lucas*, 595 F.2d 985 (5th Cir. 1979) to support his assertion that there was a meeting of the minds. However, unlike *Crowe*, there is no evidence of multiple private meetings where Gopalam was discussed or a series of retaliatory acts and harassment. Furthermore, Gopalam does not point to any specific evidence tending to show that Bennett, the

Private Defendants, or Officer Breaux acted with any illicit intent to perform an illegal act. *See Tebo v. Tebo*, 550 F.3d 492, 497 (5th Cir. 2008).

Gopalam's evidence fails to demonstrate that there was joint activity between Bennett or the Private Defendants and Officer Breaux. Furthermore, Gopalam does not allege specific facts to show that there is a genuine issue of material fact as to whether there was an agreement between Bennett and the Private Defendants to commit an illegal act. Accordingly, the Court grants summary judgment on this claim.

### C. Supervisory Liability Claim

City Defendants argue that Gopalam's § 1983 supervisory liability claim against Chief Jackson must fail because supervisory officials cannot be held liable for the actions of their subordinates under § 1983 on any theory of vicarious liability or *respondeat superior*. City Defendants further argue that there is no evidence that Jackson failed to train or supervise Officer Breaux nor is their evidence that he acted with deliberate indifference. Alternatively, the City Defendants argue that Jackson is entitled to qualified immunity. In response, Gopalam concedes that Jackson cannot be held liable for supervisory liability under any theory of vicarious liability or *respondeat superior* liability. Instead, Gopalam asserts that the events giving rise to his cause of action qualify under the "single incident exception" for establishing failure to train liability. In reply, the City Defendants argue that Gopalam has failed to present evidence that the "single incident exception" is applicable to the present matter.

To support a claim for failure to train or to supervise, a plaintiff must show that (1) the supervisor either failed to train or supervise a subordinate official; (2) there is a causal link between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise constitutes deliberate indifference. *Smith v. Brenoesttsy*, 158 F.3d

908, 911-12 (5th Cir. 1998). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997). Generally, deliberate indifference requires that the plaintiff show (1) a pattern of similar violations; (2) that the inadequacy of the training was obvious; and (3) the inadequacy of the training was obviously likely to result in a constitutional violation.

Gopalam concedes that he cannot satisfy the deliberate indifference prong of the failure to supervise or train test because he cannot demonstrate a pattern of similar violations. Nevertheless, he avers that the "single incident exception" applies. The "single incident exception" may apply if there is a "possibility of recurring situations that present an obvious potential for violation of constitutional rights and the need for additional or different police training." *Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000). That said, courts have consistently rejected the application of the "single incident exception."

The Court need not address whether or not the "single incident exception" applies because Gopalam has not adduced any evidence on summary judgment to support its application to the present matter. Instead, he promises to adduce sufficient evidence at trial. That is not the applicable evidentiary standard at this stage of the proceedings. Gopalam must point to evidence in the evidentiary record as it now stands. Since he cannot do so and since he concedes that he cannot satisfy the deliberate indifference prong of the failure to supervise or train analysis, the City Defendants are entitled to summary judgment on this claim.

### D. Municipal Liability Claim Against the City of Gonzales

Gopalam asserts a § 1983 claim against the City of Gonzales under several theories including (1) *respondeat superior*, (2) improper investigation of citizen complaints, (3) tolerating known misconduct, and (4) improper supervision and training.

Citing *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658 (1978) and its progeny, the City Defendants argue that Gopalam's *respondeat superior* claim against the City of Gonzales must be dismissed because such claim is not actionable under § 1983. As it pertains to the remaining theories of liability, the City Defendants argue that Gopalam has failed to identify, and alternatively, has no evidence to support a municipal policy or custom that caused a constitutional violation. Again Gopalam concedes that the City of Gonzales cannot be held liable on a theory of *respondeat superior*. Nonetheless, he avers for the first time that there is an "off-duty detail" policy which the City has implemented that works to deprive citizens of their constitutional rights. Presumably, since Gopalam does not state to which claims this policy is applicable, Gopalam is using the "off-duty detail" policy to support his remaining theories of municipal liability.[6] Gopalam has not presented any evidence of this "off-duty detail" policy but merely states that it exists. Furthermore, he makes conclusory allegations, citing to case law that the Court has found inapposite to the present matter, that the policy works to deprive citizens of their rights. These conclusory and unsupported assumptions are not sufficient to survive a motion for summary judgment. Accordingly, the City Defendants are entitled to summary judgment on the § 1983 claim against the City of Gonzales.

---

[6] Though Gopalam makes no mention of his theory to impose § 1983 liability on the basis of the City of Gonzales tolerating known misconduct, the Court will summarily address this theory out of an abundance of caution. The Court agrees with the City Defendants that this theory sounds in negligence and negligence cannot be the basis of a § 1983 claim. *See Daniels v. Williams*, 474 U.S. 327 (1986). Even if this claim could not be characterized as a negligence claim, Gopalam has failed to cite to any evidence in the record to support this theory of liability. Therefore, the City Defendants are entitled to summary judgment on this theory of liability as well.

Since the Court has determined that all of the Defendants are entitled to summary judgment on all of the claims arising under federal law, the Defendants motions for partial summary judgment based on plaintiff's claims for damages sustained by his business entities (docs. 39 and 42) are moot.

### E. State Law Claims

The Court has determined that all of the Defendants are entitled to summary judgment on their claims arising under federal law. All that remains are Gopalam's state law claims for negligence against the City of Gonzales and for intentional infliction of emotion distress against all Defendants. Therefore, the Court must determine whether to continue to exercise supplemental jurisdiction over Gopalam's remaining claims. *See* 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction if, among other things, "the district court has dismissed all claims over which it has original jurisdiction."§ 1367(c). While the court has wide discretion in determining whether to exercise supplemental jurisdiction, the "general rule" is to decline to exercise such jurisdiction when all federal claims have been eliminated prior to trial. *Smith v. Amedisys Inc.*, 298 F.3d 434, 446-47 (5th Cir. 2002) (quoting *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (1999)).

Here, the Court has dismissed all of the claims over which it had original jurisdiction. Only the state law claims remain and the Court lacks an independent basis for asserting jurisdiction over them. Since the claims involve issues of state law, the principles of comity weigh in favor of allowing a state court to adjudicate their merits. Therefore, the Court finds that the general rule counseling against the exercise of supplemental jurisdiction over state law claims when no federal claims remain applies in this case. Accordingly, the state law claims are dismissed without prejudice.

15

Case 3:12-cv-00542-JJB-SCR   Document 55   02/06/14   Page 15 of 16

**III.    Conclusion**

For the reasons stated herein, the Defendants' motions for summary judgment (docs. 38, 41, and 43) are GRANTED.  Defendants' motions for partial summary judgment based on plaintiff's claims for damages (docs. 39 and 42) are DISMISSED AS MOOT.  Gopalam's state law claims are DISMISSED WITHOUT PREJUDICE.

Signed in Baton Rouge, Louisiana, on February 5, 2014.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**